NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

BONNA D., *Appellant*,

*v.*

CHELSEA M., P.D., *Appellees*.

No. 1 CA-JV 22-0079
FILED 8-30-2022

Appeal from the Superior Court in Maricopa County
No. JS519713
The Honorable Cynthia L. Gialketsis, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Janet S. Story, Attorney at Law, Scottsdale
By Janet S. Story
*Co-Counsel for Appellant*

De La Ossa and Ramos, PLLC, Phoenix
By Edwin Ramos
*Co-Counsel for Appellant*

Czop Law Firm, PLLC, Higley
By Steven Czop
*Counsel for Appellee Chelsea M.*

---

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Maria Elena Cruz and Judge Angela K. Paton joined.

---

**S W A N N**, Judge:

¶1        Bonna D. ("Grandmother") appeals from the juvenile court's order denying her petition to terminate Chelsea M.'s ("Mother's") parental rights to P.D.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        P.D. was born to Mother and Todd D. ("Father") in December 2009.  In June 2012, Grandmother took temporary custody of P.D. after Mother and Father were served an eviction notice and their electricity was shut off.  Mother and Father consented for Grandmother to be P.D.'s permanent guardian in 2013.  In May 2018, Grandmother and P.D. moved to Arizona while Mother remained in Ohio.

¶3        During P.D.'s permanent guardianship, Mother did not provide any financial support, went long periods of time without contacting P.D. and failed to send P.D. cards, gifts, or letters, aside from one gift in December 2021.

¶4        In September 2020, Grandmother petitioned to terminate Mother and Father's parental rights to P.D.  As to Mother, the petition alleged that she abandoned P.D. pursuant to A.R.S. § 8-533(B)(1) and that termination of Mother's parental rights was in P.D.'s best interests.  Father consented to termination.[1]  After a hearing, the court denied the petition, leaving the permanent guardianship intact.  Although the court found that Grandmother proved by clear and convincing evidence Mother had abandoned P.D., the court found termination was not in P.D.'s best interests.

¶5        Grandmother appeals.

---

[1]        Father died shortly after he consented to termination.

**DISCUSSION**

¶6          Parents have a fundamental right to the care and custody of their children. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005). But these rights are not absolute, and the court may terminate parental rights if it finds clear and convincing evidence of one of the statutory grounds for termination, and finds by a preponderance of the evidence that termination is in the best interests of the child. A.R.S. §§ 8–533(B), –537(B); *Kent K.*, 210 Ariz. at 281–82, 288, ¶¶ 7, 41.

¶7          On appeal, Grandmother challenges the court's finding that termination of Mother's parental rights was not in P.D.'s best interests. We review the court's decision on a petition to terminate parental rights for an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). Because the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004), we will affirm the court's decision unless there is no reasonable evidence to support it. *Xavier R. v. Joseph R.*, 230 Ariz. 96, 100, ¶ 11 (App. 2012).

¶8          The court considers the totality of the circumstances when conducting the best-interests inquiry. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 1 (2018). The court balances the parent's interests against the child's interests, but the child's best interests are paramount. *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 478, ¶¶ 30–31 (2022). The court's "primary concern in the best-interests inquiry is the 'child's interest in stability and security.'" *Id.* at ¶ 31 (quotation omitted). Termination of parental rights is in the child's best interests if the child would benefit from the termination or would be harmed if the relationship continued. *Alma S.*, 245 Ariz. at 150–51, ¶ 13.

¶9          Factors that weigh in favor of whether termination is in the child's best interests include whether: 1) an adoptive placement is immediately available, 2) the existing placement is meeting the needs of the child, and 3) the child is adoptable. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3–4, ¶ 12 (2016). Adoptability alone, however, does not automatically mean termination is in the child's best interests. *Id.* at 4, ¶ 14.

¶10          Grandmother contends that she met her burden of proving termination of Mother's parental rights was in P.D.'s best interests because P.D. is adoptable. The court heard testimony that Grandmother sought to terminate Mother's parental rights because she was interested in and

immediately available to adopt P.D., and P.D. wanted Grandmother to adopt him. Grandmother also wanted to ensure P.D. went to her daughter and son-in-law, if she became unable to care for him, rather than to Mother. Grandmother testified that P.D.'s life was stable, and the social study specialist opined that Grandmother was meeting P.D.'s needs. Grandmother also testified that she would continue to allow Mother to have contact with P.D. if her parental rights were terminated. Mother testified that her relationship with P.D. was estranged and she had difficulty working with Grandmother to schedule visitation.

¶11        Mother, Grandmother, the social study specialist, and P.D. all agreed that P.D. would benefit from continuing his relationship with Mother. The court found that P.D. would benefit from a continued relationship with Mother but was concerned that Grandmother would not continue the relationship if it terminated Mother's parental rights. The court did not err in determining that the adoptability of P.D. was not dispositive in denying Grandmother's petition.

¶12        Grandmother next argues that the court's denial of her petition to terminate Mother's parental rights could harm P.D. According to Grandmother, she wanted to adopt P.D. because he expressed fears that Mother could take him from Grandmother's care at any time. Mother testified that she was not going to remove P.D. from Grandmother's care, she just wanted to foster a relationship with him. Although Mother filed a motion to modify child custody in 2017 when Grandmother sought to move P.D. from Ohio to Arizona, Mother voluntarily dismissed her petition because she was unable to afford her attorney. Mother has not otherwise interfered with P.D.'s permanent guardianship. The court acted within its discretion in finding that continuing P.D.'s relationship with Mother did not present a threat to his stability and security.

¶13        Grandmother asks us to reweigh the evidence on appeal because the court credited Mother's testimony that she would not remove P.D. from Grandmother's care, but rejected evidence that Grandmother would allow P.D. to continue his relationship with Mother after termination. The juvenile court was in the best position to assess the credibility of the witnesses and weigh the evidence, and we will not disturb its findings on appeal. *Oscar O.*, 209 Ariz. at 336, ¶ 14 ("We are mindful that our function on review is not to reweigh the evidence before the juvenile court or supersede its assessment of the evidence with our own.").

¶14        Grandmother contends that because Mother provided conflicting evidence on the types of drugs she used in the past, she was not

credible and could harm P.D. by exposing him to drugs. But Mother testified that she had been sober since December 2015, apart from marijuana use eight months prior to the termination hearing. The court acted within its discretion in crediting that testimony and finding that P.D. would not be harmed by a continuation of his relationship with Mother.

**¶15** Finally, Grandmother argues that Mother has not made sufficient efforts to repair her relationship with P.D. during his permanent guardianship; therefore, termination was in his best interests. *See Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577–78 (App. 1994). Although the court found that Mother's minimal efforts to support and contact P.D. constituted abandonment, *see* A.R.S. §§ 8-531(A)(1), -533(B)(1), it found that P.D. would benefit from continuing his relationship with Mother. The court cannot "assume that a child will benefit from a termination simply because he has been abandoned." *Demetrius L.*, 239 Ariz. at 4, ¶ 14. We discern no abuse of discretion.

## CONCLUSION

**¶16** The record contains reasonable evidence to support the court's decision that termination of Mother's parental rights was not in P.D.'s best interests. We affirm.

